UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MIKA L. MEYERS,

    Petitioner,

    v.

MIKE DOWNING,

    Respondent.

Case No. 14-cv-05476-VC (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Mika L. Meyers has filed a *pro se* habeas petition challenging the validity of his conviction, following a jury trial, of possession of a controlled substance, (count one) and maintaining a place for the purpose of selling, giving away or using heroin (count two). Meyers asserts two claims: (1) there was insufficient evidence to support his conviction on count two: and (2) the trial court erroneously instructed on an element of count two. The respondent has filed an answer; Meyers has not filed a traverse. Because the claims lack merit, the petition is denied.

## BACKGROUND

On April 11, 2012, a jury acquitted Meyers of possession of a controlled substance for sale and found him guilty of the charges described above. On April 12, 2012, Meyers admitted he had two prior strike convictions and had served two prior prison terms. On May 14, 2012, the trial court sentenced Meyers to twenty-seven years to life in prison.

On September 28, 2012, Meyers appealed his conviction. On August 4, 2014, the Court of Appeal affirmed the conviction. *See People v. Meyers*, 2014 WL 3814842 (Cal. App. Aug. 4, 2014) (unpublished). On September 5, 2014, Meyers filed a petition for review in the California Supreme Court, which was denied on October 22, 2014. On December 16, 2014, Meyers filed this federal petition.

The following is a summary of the facts taken from the Court of Appeal's opinion. *See Meyers*, 2014 WL 3814842, * 1-2.

On March 9, 2011, detectives and officers of the Eureka Police Department conducted a parole search of Meyers' residence in Eureka. When officers saw Meyers peek out of a window, they ordered him to leave the residence and handcuffed him in the backyard. Officers found two other men inside the residence, Robert Fisher and Christopher Benoit, who were handcuffed and moved to the backyard. During a search of the residence, Detective Patrick Bishop found a bag containing eight bindles of heroin (seven weighed .2 grams; one weighed .3 grams), heroin residue, another bindle of heroin and several suboxone pills (commonly used to help heroin addicts break their addiction). The bindles were wrapped in yellow cellophane, which was wrapped around a white plastic bag with pieces torn off; the torn plastic pieces were used to package controlled substances by sealing the drugs inside the plastic. On a coat hanger near the front door, a hypodermic needle was found inside a green jacket and another bindle of heroin wrapped in red cellophane was found inside a blue jacket. In the kitchen, officers found heroin residue, loose drug packaging material (pieces of yellow cellophane plastic similar to that used to package the heroin bindles), spoons used to cook heroin and a hypodermic needle. In the bedroom, officers found two additional "cooker" spoons, a piece of aluminum foil with burn marks, and one or two hypodermic syringe needles that appeared to have been used to inject a controlled substance such as heroin. In the bathroom, officers found a hypodermic syringe that someone had attempted to shove down the sink drain hole, and a lid to a gram scale that was covered with a brown tarry substance that appeared to be heroin residue.

At the residence, Detective Patrick Bishop spoke with Fisher after he was detained and waived his *Miranda* rights. Fisher admitted that he was at the residence to buy drugs from Meyers. At Meyers' trial, Bishop testified that Fisher also admitted he used heroin, knew Meyers was a heroin seller who typically sold "20s," and had purchased heroin from Meyers in the past.

As the officers were searching the residence, a man came to the front door with $40 and was detained by the officers.

Meyers was arrested after the officers completed their search and seizure of the evidence at

2

the residence.  During the booking process, an officer found two bindles of heroin in Meyers' pants pocket.  Meyers spontaneously said that the bindles were "fifths" (about .2 grams) and "that's what [he] paid for [them]."  While Meyers was in jail, he wrote a letter in which he stated he "got cracked for possession for sale on 3/9/11 was not profiteering [sic]."

All but two of the seized twelve bindles of heroin weighed .2 grams or less; the other bindles weighed approximately .4 grams and .6 grams.  All the bindles together weighed approximately two grams.

At Meyers' trial, Sergeant Steven Watson, an expert in the identification of narcotics and possession of heroin for sale, testified the amount and the packaging of the recovered heroin indicated it was possessed for sale.  According to Watson, it would be more cost effective for a drug user to buy drugs in gram weights and then break off small pieces for personal use.  He also stated that, unless a drug user was selling drugs, there would be no reason to have bindles measured in sales weights and have a supply of unused packaging materials.  Watson opined that Meyers was a "user dealer," and that it was common for heroin users to sell heroin and to allow other heroin users in their residence to use heroin.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  This is a highly deferential standard for evaluating state court rulings: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d*)*.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  In this case, the California Court of Appeal is the highest court to issue a reasoned decision on Meyers' claims.

## DISCUSSION

### I. Insufficient Evidence

Meyers claims there was insufficient evidence to support his conviction on count two— maintaining a place for the purpose of selling, giving away or using heroin.  He contends there was no evidence to support a conclusion that heroin was used in the house by anyone other than him, or that heroin was used in the house on more than one occasion.  He argues that his claim is supported by the fact that the jury found him guilty only of possession, while rejecting the charge of possession for sale.

A state prisoner who alleges that the evidence in support of his state conviction is insufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim.  *Jackson v. Virginia*, 443 U.S. 307, 321 (1979).  On habeas review, evidence is sufficient to support a conviction when, viewed in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  The habeas court must presume the trier of fact resolved any conflict in the evidence in favor of the prosecution, and must defer to that resolution.  *Id.* at 326.  *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of deference. *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012); *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (federal habeas court must ask whether the state court decision reflected an unreasonable application of *Jackson* to the facts of the case).  "The only question under *Jackson* is whether the finding was so insupportable as to fall below the threshold of bare rationality."  *Johnson*, 132 S.Ct. at 2065.

California Penal Code section 11366 provides, in relevant part:

> Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance . . . [including heroin] . . . shall be punished by imprisonment in county jail for a period of not more than one year or the state prison.

To prove a violation of this section, the prosecutor must establish, beyond a reasonable doubt, that the defendant opened or maintained a place for the continuous or repeated selling or giving away of a controlled substance or for allowing others to use a controlled substance. *People v. Franco*, 180 Cal. App. 4th 713, 721 (2009). A single or isolated instance of misconduct does not establish a violation. *People v. Vera*, 69 Cal. App. 4th 1100, 1102 (1999).

There was no dispute that, at Meyers' residence, police found physical evidence of heroin, drug paraphernalia, and material for packaging the heroin. 1 Reporter's Transcript ("RT") 135-39; 162-65; 177-79; 209; 2 RT 245-50; 281. Based on this evidence, Sgt. Watson, an expert in the identification of narcotics and possession of heroin for sale, opined that Meyers possessed heroin for sale. 2 RT 245-50. Meyers also admitted that the bindles of heroin in his possession were "fifths," 1 RT 208, an amount of heroin a seller would commonly sell for $20 after buying several grams at a discounted bulk rate. 2 RT 248-49. This is sufficient evidence for the jury to have found that Meyers maintained his residence for one or more of the prohibited purposes.

There was also sufficient evidence that Meyers was repeatedly using his residence for the prohibited purposes. Fisher admitted that, on the day of the search of Meyers' residence, he was there to buy heroin from Meyers and that he had been there in the past to buy drugs. 2 RT 281-82. And during the search, another man came to Meyers' front door with $40 on his person. 2 RT 245-47. Taking this evidence in the light most favorable to the prosecution, a jury could reasonably infer that Meyers maintained the residence for repeatedly selling, giving away or using and sharing heroin with others.

Contrary to Meyers' argument, the fact that the jury found him not guilty of possession for sale of a controlled substance does not undermine the sufficiency of the evidence on count two. *See United States v. Powell*, (1984) 469 U.S. 57, 64-69 (1984) (even if an acquittal on one charge is factually irreconcilable with a guilty verdict on a different charge, court must give effect to both as long as the latter charge is supported by substantial evidence).

**II. Erroneous Instruction**

Meyers contends the trial court's response to a question by the jury constituted an erroneous instruction on an element of count two.

The trial court instructed the jury with CALCRIM no. 2440, as follows:

> The defendant is charged in Court Two with maintaining a place for the sale or use of a controlled substance.
>
> To prove that the defendant is guilty of this crime, the People must prove two things: One: the defendant maintained a place; and Two: the defendant maintained the place with the intent to sell, give away, or allow others to use a controlled substance, specifically heroin, on a continuous or repeated basis at the place.

2 RT 337; CT 145.

The jury sent the court the following question: "Regarding question of residence maintaining with intent to sell: Does a house have to be maintained with *solely* the intent to use, sell or give away drugs? For example, when Mr. Myers [sic] initially rented the house, did he have to have known the purpose for renting was to use drugs?" Resp's Ex. 9 (emphasis in original).

Without objection from either party, the trial court responded as follows:

> (1) No, the house does not have to be maintained solely for the purpose and intent to use, sell or give away drugs. (2) No, the defendant did not have to initially rent the house for the purpose of using, selling or giving away drugs, but must have formed the specific intent to use, sell or give away drugs at that location, on a continuous or repeated basis, at or about the time of the alleged offense.

Resp's Ex. 10 (emphasis in original).

On appeal, Meyers argued that the trial court's answer was erroneous because § 11366 is not violated when a person rents a place to use as a residence, but coincidentally also allows others to use drugs there. The California Court of Appeal rejected the claim, citing California authority for the proposition that § 11366 is violated when a residence is used for a multiplicity of purposes. *See Meyers*, 2014 WL 3814842, at *4.

This habeas Court must defer to the state's interpretation of its own laws. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to

6

reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993) (federal habeas courts must defer to state courts' interpretations of their own state laws). This deference applies to the state's determination of the elements of the offense on which the jury must be instructed. *Johnson*, 132 S.Ct. at 2064.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

Dated: November 9, 2015

_____
VINCE CHHABRIA
United States District Judge